## SECURITIES AND EXCHANGE COMMISSION

v.

### John J. LAWBAUGH

No. CIV.A. DKC2003–2768.

United States District Court,
D. Maryland.

March 14, 2005.

Merri Jo Gillette, Amy J. Greer, David S. Horowitz, US Securities and Exchange Commission, Philadelphia, PA, Thomas F. Corcoran, Office of the United States Attorney, Thomas M. DiBiagio, Baltimore, MD, for Plaintiff.

Henry St. John Fitzgerald, Law Office of Henry St. John Fitzgerald, Arlington, VA, Gloria Robinson Teasley, Attorney at Law, Greenbelt, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution is the motion of Plaintiff Securities and Exchange Commission ("the SEC") for entry of default judgment against Defendant John J. Lawbaugh [1] pursuant to Fed.R.Civ.P. 55(b)(2). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants Plaintiff's motion and orders permanent injunctive relief, disgorgement, prejudgment interest, and civil penalties.

## I. Background

The SEC filed the complaint in this matter on September 29, 2003, alleging securities fraud in violation of section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5; and sections 17(e)(1), 34(a), 34(b) and 37 of the Investment Company Act of 1940 ("Investment Company Act"), 15 U.S.C. §§ 80a–17(e)(1), 33(a), 33(b), and 36. Specifically, Plaintiff alleges the following:

> Between August 1998 and July 2002, Lawbaugh diverted in excess of $2 million from 1st Atlantic Guaranty Corporation ("1st Atlantic") and SBM Certificate Company ("SBM") through a series of fraudulent transactions. Among other things, Lawbaugh skimmed money from payments made to purchase portfolio assets, directed payments to companies he secretly controlled for services never performed, and altered documents

> to conceal his fraud. As a result, SBM materially misstated its financial condition and reserve levels, among other misinformation, in registration statements, prospectuses and other filings with the Commission.

> In addition, beginning in at least 1997, Lawbaugh misappropriated in excess of $1 million from several individual investors by falsely representing to them that he would invest their funds in 1st Atlantic's face-amount certificates. He never invested their money as represented but converted these monies to his own use by depositing the funds into his own personal accounts. He further deceived them by preparing and disseminating false account statements, which he was still sending out as late as the Fall of 2002.

Paper no. 19, at 1–2.

## II. Default

In filing the instant motion, Plaintiff, who requests injunctive relief, disgorgement, and a civil penalty, has complied with the requirement that, after obtaining entry of default by the clerk pursuant to Rule 55(a), a party seeking default judgment and relief other than a "sum certain" apply to the court. Rule 55(b)(2).

Entry of default judgment is left to the discretion of the court. *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow*, 232 F.Supp.2d at 494–95 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party.

1. There is some confusion as to whether Defendant's middle initial is "L" or "J." Plaintiff believes, based upon its investigation, that it is "J," *see* paper no. 11, at 1 n. 1. Counsel for

Mr. Lawbaugh have referred to him as John L. Lawbaugh, but the court will use the name under which he was sued.

*See Jackson v. Beech,* 636 F.2d 831, 836 (D.C.Cir.1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C.Cir.1970)).

[3] Defendant has been unresponsive for more than a year. The court has not heard from him since denying his motion to dismiss on February 19, 2004. Defendant was then required by Rule 12(a)(4)(A) to answer the complaint within ten days, but did not. The clerk entered default pursuant to Rule 55(a) on May 25, 2004, upon motion properly served to Defendant's counsel. On August 10, 2004, Plaintiff filed the instant motion; it, too, was duly served upon Defendant, but Defendant has failed to reply. In short, Defendant has had ample notice of impending judgment by default, but has taken no action whatsoever. Entry of a default judgment is therefore clearly appropriate.

## III. Liability

[4] Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not. *See Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983).

■ Plaintiff's pleadings, taken as true, establish all of the alleged violations. Fraud and deception in the sale of securities through the use of "any means or instrumentality of interstate commerce, or of the mails" is prohibited variously by section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b–5 of the Exchange Act, C.F.R. § 240.10b–5. Section 17(a) prohibits fraud in the offer or sale of securities, 15 U.S.C. § 77q(a); in connection with the purchase or sale of securities, Section 10(b) of the Exchange Act and Rule 10b–5 of that Act prohibit, respectively, employing "any manipulative or deceptive device or contri-

vance," 15 U.S.C. § 78j(b), or "any device, scheme, or artifice to defraud," C.F.R. § 240.10b–5. Taking as true the allegations in Plaintiff's complaint, Defendant clearly violated all three by "diverting approximately $2 million from 1st Atlantic and SBM through a series of fraudulent transactions involving the skimming of money through overpayment schemes as well as fraudulent payments to companies Lawbaugh secretly controlled for services that were never rendered;" causing "material misrepresentations and omissions in numerous financial forms for SBM and 1st Atlantic, which forms were filed with the Commission and distributed to investors [and] overstated their respective assets and failed to disclosed both the fact and the financial impact of Lawbaugh's misappropriations;" and misappropriating "approximately $1 million from at least three investors by promising to invest their funds in 1st Atlantic face-amount certificates, but instead depositing those funds directly into his personal bank accounts" and then lulling the investors "by creating and disseminating fictitious account statements." Paper no. 1, at ¶¶ 18–20; *see id.* at ¶¶ 21–31.

[6] Defendant also clearly violated sections 17(e)(1), 34(a), 34(b), and 37 of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–17(e)(1), 80a–33(a), 80a–33(b), 80a–36. Section 17(e)(1) prohibits "any affiliated person of a registered investment company" from accepting "any compensation (other than a regular salary or wages from such registered company) for the purchase or sale of any property to or for such registered company or any controlled company thereof . . . ." "Affiliated person[s]" include officers and directors, *see* 15 U.S.C. § 80a–2(a)(3), so Lawbaugh, as CEO of both 1st Atlantic and SBM, was an affiliated person. By "[f]unneling money to himself through the

various companies he owned under the guise of loan origination and other fees" in connection with the purchase and sale of portfolio assets for the two companies, he violated section 17(e)(1)'s prohibition on accepting non-wage compensation for the purchase or sale of property. Paper no. 19, at 15; *see* paper no. 1, at ¶¶ 32–37.

Section 34(a), 15 U.S.C. § 80a–33(a), prohibits the destruction, mutilation, or alteration of any "account, book, or other document the preservation of which has been required pursuant to section 31(a)....." Rule 31(a) requires the preservation of the "accounts, books, and other documents relating to its business which constitutes the record forming the basis for financial statements required to be filed pursuant to Section 30 of the Investment Company Act." 17 C.F.R. § 270.31a–1(a). Rule 31a–1(b)(6) further requires an investment company to maintain a "record of all other portfolio purchase or sales ...." 17 C.F.R. § 270.31a–1(b)(6). Defendant violated section 34(a) on at least one occasion by altering a purchase contract, adding $900,000 to the original contracted price. *See* paper no. 1, at ¶ 31.

Section 34(b), 15 U.S.C. § 80a–33(b), prohibits, in the same types of documents, "any untrue statement of a material fact" or the omission of any fact that results in the document being "materially misleading." Defendant violated section 34(b) by (1) by giving a fictitious letter, purporting to be from Prince George's County, to both SBM's accounting department and independent auditors, falsely stating the value of certain tax lien certificates; and (2) falsifying an HUD–1 Settlement Statement

form regarding a loan transaction. *See* paper no. 1, at ¶¶ 28, 37.

■ Finally, Defendant violated section 37, 15 U.S.C. § 80a–36, which prohibits stealing, converting, or embezzling "any of the moneys, funds, securities, credits, property, or assets of any registered investment company." "Conversion may include misuse or abuse of property. It may reach use in an unauthorized manner or to an unauthorized extent of property placed in one's custody for limited use." *Brown v. Bullock*, 294 F.2d 415, 419 (2nd Cir. 1961) (quoting *Morissette v. United States*, 1952, 342 U.S. 246, 272, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). Here, Defendant violated section 37 by "caus[ing] 1st Atlantic and SBM to deposit funds into accounts he controlled and then misus[ing] those funds for his personal benefit." Paper no. 19, at 13; *see* paper no. 1, at ¶¶ 21–37. For example, Defendant caused 1st Atlantic and SBM to overpay vendors, and then directed the vendors to wire the overpayments to his personal accounts. *See id.* at ¶¶ 23, 29–30. On at least one occasion Defendant also authorized SBM to borrow money, but then diverted some of the loan amount to his personal account. *See id.* at ¶¶ 35–36.

## IV. Relief

■ Having found Defendant liable for all of the violations alleged in Plaintiff's complaint, the court turns to the question of relief. Plaintiff seeks (1) permanently to enjoin Defendant from violation of federal securities laws; (2) disgorgement of Defendant's ill-gotten gains, plus prejudgment interest; (3) to bar Defendant from future service in a variety of fiduciary roles; and (4) a civil penalty of $120,000.[2]

---

**2.** The court notes as an initial matter that no hearing is necessary before imposing any of the relief requested. Once a default is found, "[i]f the allegations are distinct and positive, they may be taken as true without proof."

*Tallman v. Ladd*, 5 F.2d 582, 584 (4th Cir. 1925) (quoting *Ohio Cent. R.R. Co. v. Cent. Trust Co.*, 133 U.S. 83, 91, 10 S.Ct. 235, 33 L.Ed. 561 (1890)). Rule 55(b)(2) requires a hearing after entry of default if "necessary ...

## A. Permanent Injunction from Violation of Securities Laws

Where a violation of securities law has been found, a court is vested with broad discretion in deciding whether to grant injunctive relief. *SEC v. Am. Realty Trust*, 429 F.Supp. 1148, 1175 (E.D.Va. 1977) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)), *rev'd on other grounds*, 586 F.2d 1001 (4th Cir.1978). "The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2nd Cir. 1972) (citing *W.T. Grant.*, 345 U.S. at 633, 73 S.Ct. 894 ("The purpose of an injunction is to prevent future violations .... The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (citation omitted)). In *SEC v. Bonastia*, 614 F.2d 908 (3rd Cir.1980), the Third Circuit summarized the purpose of, and criteria for, granting injunctive relief:

> [T]he Securities Act of 1933[and] the Securities Exchange Act ... provide that whenever it appears to the commission that a person is engaged in acts in violation of the securities laws, an action to enjoin those acts may be brought and, upon a proper showing by the commission, the court shall grant the injunctive relief requested. The Supreme Court has viewed injunctive relief as necessary

in these actions for the basic protection of the investing public, *e.g., SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191, 84 S.Ct. 275, 282, 11 L.Ed.2d 237 (1963), and this court has recently expressed its "awareness of the importance of injunctions in enforcing" the securities laws, *SEC v. Warren*, 583 F.2d 115, 122 (3rd Cir.1978). The purpose of injunctive relief is not to punish the violator, but to deter him from committing future infractions of the securities laws. *SEC v. Koracorp Industries, Inc.*, 575 F.2d 692, 697 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

The well established standard developed by the courts to determine if an injunction should issue in a case involving securities violations reflects these purposes and is based on a determination of whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct. *See Tanzer v. Huffines*, 408 F.2d 42, 43 n. 1 (3rd Cir.1969) (per curiam); *see also SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir.1978); *SEC v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 99–100 (2nd Cir.1978). When examining the factors to be considered in reaching a determination under this standard, courts have looked to, among other things, the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances

---

to determine the amount of damages," but here, no "damages" are sought. Disgorgement is not considered an award of damages. See *Ellett Bros. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir.2001); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir.1993) (citing *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 570, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (actions for

disgorgement are equitable in nature) and *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 96 (2nd Cir.1978) (disgorgement is "decidedly more analogous to the traditional jurisdiction of equity to award restitution")). Likewise, civil penalties "are not 'damages' payable to the victim, but fines or assessments payable to the government." *Ellett Bros.*, 275 F.3d at 384.

against future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur. *E.g., SEC v. Universal Major Industries Corp.*, 546 F.2d 1044, 1048 (2nd Cir.1976), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977). Essentially, a court makes a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed. *SEC v. Koracorp Industries, Inc.*, 575 F.2d at 699; *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2nd Cir.1977); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2nd Cir.1975).

614 F.2d at 912. Here, an injunction is clearly appropriate. Defendant altered and falsified official documents, contrived phony account statements for individual investors, and created sham corporations to accept payments, all indicative of a high degree of scienter. The infraction was not isolated, but recurred over a period of several years. Defendant has yet explicitly to recognize the wrongful nature of his conduct, nor has he provided any assurances against future violations. In sum, there is nothing to indicate that this behavior will not recur, and much to suggest that it may. The court therefore grants Plaintiff's request for a permanent injunction against future violations.

**B. Disgorgement and Prejudgment Interest**

▬▬▬ After a district court establishes a violation of securities laws, it may order disgorgement. *See, e.g., SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95–96 (2nd Cir.1978). The purpose of disgorgement is to force the defendant into giving up unjust enrichment he received as a result of his illegal activities. *See Commonwealth Chem. Sec.*, 574 F.2d at 102;

*accord SEC v. Tome*, 833 F.2d 1086, 1096 (2nd Cir.1987), *cert. denied,* 486 U.S. 1014, 1015, 108 S.Ct. 1751, 100 L.Ed.2d 213 (1988). Disgorgement of $4,149,752.89, equal to the amount Defendant misappropriated from 1st Atlantic ($2,532,981) and individual investors ($1,616,771.89), is therefore granted.

Because 1st Atlantic and the individual investors already have been compensated in these amounts through the forced sale in bankruptcy of Defendant's interest in 1st Atlantic, Defendant will be credited for that compensation and will not be required to pay again. Instead, the court will impose disgorgement, but take notice that disgorgement is satisfied.

**C. Permanent Injunction From Service As Officer or Director**

▬▬▬ Plaintiff requests that Defendant be barred from future service as an officer or director pursuant to both the Investment Company Act and the Exchange Act. Both statutes authorize such a bar. Under the Investment Company Act, once allegations are established of "any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts ... as an officer, director, member of any advisory board, investment adviser, or depositor," "the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances ...." 15 U.S.C. § 80a–35(a). The version of Section 21(d)(2) of the Exchange Act in effect at the time of Defendant's violative conduct stated:

[T]he court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall deter-

mine, any person who violated section 10(b) of this title or the rules or regulations thereunder from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 12 of this title or that is required to file reports pursuant to section 15(d) of this title if the person's conduct demonstrates substantial unfitness to serve as an officer or director of any such issuer.

15 U.S.C. § 78u(d)(2) (2001). The factors courts consider to determine whether or not to impose such a bar is similar to those used when weighing permanent injunction against future violation of the securities laws: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Patel*, 61 F.3d 137, 141 (2nd Cir. 1995). Here, as noted *supra* at IV.A, the violation was egregious and indicative of a high degree of scienter, and, because Defendant has not expressed remorse, the court finds a strong likelihood of recurrence. Defendant's role was central to the violation, and his economic stake was quite substantial: Until caught, he had taken millions of dollars. In sum, the balance of factors indicates that the requested bar is clearly appropriate here. It is therefore granted.

### D. Civil Penalty

■ Finally, Plaintiff requests that Defendant pay a civil penalty of $120,000, pursuant to section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). Both use identical language, stating that "the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation." 15 U.S.C. § 77t(d)(1); 15 U.S.C. § 78u(d)(3)(A). Such penalties are tiered, with the third tier reserved for those cases in which the violation both "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii). The third tier penalty is not to exceed the greater of $120,000 or the gross pecuniary gain to the defendant as a result of the violation. 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii); 17 C.F.R. § 201.1002 (inflationary adjustment raising maximum penalty to $120,000).

Here, a third tier penalty is clearly appropriate. Defendant's actions were fraudulent and deceitful and resulted in individual investor and corporate losses of over $4 million. Defendant will therefore pay the requested civil penalty of $120,000.

A separate Order will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 14th day of March, 2005, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion of Plaintiff Securities and Exchange Commission for entry of default judgment against Defendant John J. Lawbaugh (paper no. 19), BE, and the same hereby IS, GRANTED;

2. Judgment by default BE, and the same hereby IS, ENTERED in favor of Plaintiff Securities and Exchange Commission against Defendant John J. Lawbaugh as follows:

A. Defendant and his agents, officers, servants, employees, attorneys, and those persons in active concert or participation with him, and each of them, who receive actual notice of this Final Judgment by personal service or otherwise, BE, and the same hereby ARE, PERMANENTLY RESTRAINED AND ENJOINED from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), in the offer or sale of any security by using any means or instruments of transportation or communication in interstate commerce, or the mails:

i. to employ any device, scheme, or artifice to defraud;

ii. to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

iii. to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser;

B. Defendant and his agents, officers, servants, employees, attorneys, and those persons in active concert or participation with him, and each of them, who receive actual notice of this Final Judgment by personal service or otherwise, BE, and the same hereby ARE, PERMANENTLY RESTRAINED AND ENJOINED from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

i. to employ any device, scheme, or artifice to defraud; or

ii. to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

iii. to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;

C. Defendant and his agents, officers, servants, employees, attorneys, and those persons in active concert or participation with him, and each of them, who receive actual notice of this Final Judgment by personal service or otherwise, BE, and the same hereby ARE, PERMANENTLY RESTRAINED AND ENJOINED from violating, directly or indirectly, Section 37 of the Investment Company Act of 1940 ("Investment Company Act"), 15 U.S.C. § 80a–37, by stealing, unlawfully abstracting, unlawfully and willfully converting to his or their own use or to the use of another, or embezzling any of the monies, funds, securities, credits, property, or assets of any registered investment company;

D. Defendant and his agents, officers, servants, employees, attorneys, and those persons in active concert or participation with him, and each of them, who receive actual notice of this Final Judgment by personal service or otherwise, BE, and the same hereby ARE, PERMANENTLY RESTRAINED AND ENJOINED from violating, directly or indirectly, Section 17(e)(1) of the Investment Company Act, 15 U.S.C. § 80a–17(e)(1), by, in his or their or its capacity as an affiliated person of a registered investment company, or an affiliated person of such person, acting as agent and accepting from any source any compensation (other than a regular salary

or wages from such registered company) for the purchase or sale of any property to or for such registered company or any controlled company thereof, except in the course of such person's business as an underwriter or broker;

E. Defendant and his agents, officers, servants, employees, attorneys, and those persons in active concert or participation with him, and each of them, who receive actual notice of this Final Judgment by personal service or otherwise, BE, and the same hereby ARE, PERMANENTLY RESTRAINED AND ENJOINED from violating, directly or indirectly, Section 34 of the Investment Company Act, 15 U.S.C. § 80a–33, by:

i. willfully destroying, mutilating, or altering any account, book, or other document the preservation of which has been required pursuant to Section 31(a) or Section 32(c) of the Investment Company Act of 1940, 15 U.S.C. § 80a–30(a),31(c), except as permitted by rule, regulation, or order of the Commission; and/or

ii. making any untrue statement of a material fact in any registration statement, application, report, account, record, or other document filed or transmitted pursuant to Title 15 of the United States Code or the keeping of which is required pursuant to Section 31(a) of the Investment Company Act, 15 U.S.C. § 80a–30(a); or when filing, transmitting, or keeping any such document to omit to state therein any fact necessary in order to prevent the statements made therein, in light of the circumstances under which they were made, from being materially misleading;

F. Pursuant to Section 36(a) of the Investment Company Act, 15 U.S.C. § 80a–35(a), Defendant BE, and the same hereby IS, PERMANENTLY RESTRAINED, ENJOINED, AND PROHIBITED from acting as an officer, director, member of any advisory board, investment adviser, or depositor, or as principal underwriter of an open-end company, unit investment trust, or face-amount certificate company;

G. Pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), Defendant BE, and the same hereby IS, PERMANENTLY RESTRAINED, ENJOINED, AND PROHIBITED form acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d);

H. Defendant BE, and the same hereby IS, LIABLE FOR DISGORGEMENT, representing ill-gotten gains received as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon, for a total of $4,149,752.89;

I. Because this disgorgement and prejudgment interest amount has been paid to the injured parties—to 1st Atlantic Guaranty Corporation in cash and to certain individual investors in promissory notes—as a direct result of the forced sale in bankruptcy of Defendant's 100% stock interest in 1st Atlantic Guaranty Corporation, Defendant's obligation to pay the disgorgement and prejudgment interest amount of $4,149,752,89 BE, and the same hereby IS, SATISFIED. Nothing in this provision shall, or is intended to, limit or impair, in any way, any personal liability that Defendant may have, directly, to any individual or entity harmed as the result of the conduct alleged in the Complaint. The satisfaction of this disgorgement and prejudgment interest amount is limited solely to the judgment debt that would otherwise arise in connection with the entry of this Final Judgment in this civil enforcement action;

J. Defendant BE, and the same hereby IS, ASSESSED AND SHALL PAY A

PENALTY OF $120,000, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), as amended by 17 C.F.R. 201.1002 (February 2, 2001). Defendant shall make this payment within ten (10) business days after the entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0–3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying John Lawbaugh as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Copies of the check and the accompanying cover letter shall be simultaneously transmitted to Arthur Gabinet, District Administrator, Securities and Exchange Commission, Philadelphia District Office, 701 Market Street, Suite 2000, Philadelphia, Pennsylvania 19106;

3. This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment; and

4. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties, and CLOSE this case.