**SECURITIES AND EXCHANGE COMMISSION**

v.

**Michael RESNICK and Mark Kaiser.**

**Civil Action No. CCB–05–1254.**

United States District Court, D. Maryland.

March 31, 2009.

William Henry Kuehnle, U.S. Securities and Exchange Commission, Washington, DC, for Securities and Exchange Commission.

Richard J. Morvillo, Daniel Thomas Brown, Heather Hansen Martin, Peter Hugh White, Mayer Brown LLP, Washington, DC, for Michael Resnick and Mark Kaiser.

## *MEMORANDUM*

CATHERINE C. BLAKE, District Judge.

Now pending before the court is a motion for summary judgment as to defendant Mark P. Kaiser, filed by plaintiff Securities and Exchange Commission ("the SEC"). The SEC is seeking summary judgment as to Mr. Kaiser on the ground that his conviction on all counts in a prior criminal case collaterally estops him from litigating the current civil charges against him. The issues in this case have been fully briefed and a hearing was held on January 30, 2009. For the reasons stated below, the SEC's motion will be granted as to a substantial part of the relief sought.

## *BACKGROUND*

The relevant underlying facts in this case are set forth in my June 3, 2008 Memorandum and Order ("June Order"). *SEC v. Resnick,* 2008 WL 2346021 (D.Md. June 3, 2008). In brief terms, Mr. Kaiser, along with Michael Resnick, is alleged to have participated in a fraudulent scheme to inflate and overstate the financial results of U.S. Foodservices ("USF") and its parent company, Royal Ahold, N.V. ("Ahold") by over $700 million, for at least fiscal years 2001 and 2002, while he was USF's Chief Marketing Officer and member of its executive committee. This fraudulent accounting for promotional allowances was responsible for an approximately $500 million restatement of earnings by Ahold on February 24, 2003, which caused Ahold's stock price to plummet approximately 60%, thereby causing great economic injury to Ahold's many shareholders.[1]

On July 27, 2004, the U.S. Attorney's Office for the Southern District of New York indicted Mr. Kaiser on six counts of criminal conspiracy and securities law violations arising out of this scheme.[2] That same day, the SEC filed a civil complaint, also in the Southern District of New York,

---

1. The restatement later increased to $1.1 billion based on the fraud at USF and improper accounting for joint ventures by Ahold. For a fuller discussion, see *Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP,* 551 F.3d 305 (4th Cir.2009); *In re Royal Ahold N.V. Sec. & ERISA Litigation,* 351 F.Supp.2d 334 (D.Md.2004).

2. Specifically, these were conspiracy under 18 U.S.C. § 371 (Count I); securities fraud

charging Mr. Kaiser and Mr. Resnick with four equivalent civil counts of securities law violations. The second amended complaint in that case, filed on February 16, 2005, alleged three counts of fraud and other securities law violations, all brought under the same statutory provisions that formed the legal basis for Mr. Kaiser's corresponding criminal charges.[3] The civil complaint was transferred from the Southern District of New York to this court on May 9, 2005, in connection with related cases referred by the Judicial Panel on Multidistrict Litigation. *See In re Royal Ahold N.V. Sec., "ERISA" Litigation,* 269 F.Supp.2d 1362 (Jud.Pan.Mult.Lit.2003).

On November 8, 2006, a jury found Mr. Kaiser guilty on all six criminal counts with which he was charged. On May 18, 2007, he was sentenced to 84 months' imprisonment and fined $50,000. *See United States v. Mark Peter Kaiser,* No. 04 Cr. 00733–001(TPG) (S.D.N.Y. May 18, 2007). Notice of appeal was entered on May 31, 2007, and that appeal is still pending in the Second Circuit. Service of Mr. Kaiser's sentence has been stayed pending appeal.

The SEC now moves for summary judgment as to Mr. Kaiser, asserting collateral estoppel. In this motion, the SEC also reiterates its request for the relief sought in the complaint, namely: (1) a permanent injunction against Mr. Kaiser under 15 U.S.C. § 78u(d)(1), enjoining him from further violations of securities laws or regulations; (2) disgorgement, requiring him to disgorge "at least the [$680,500] bonus he received resulting from the inflation of the financial results of USF for the fiscal year 2001 plus prejudgment interest," as well as his salary for 2001 [$429,999] and 2002 [$438,461] (Pl.'s Mot. at 30); (3) an officer and director bar under 15 U.S.C. § 78u(d)(2), preventing him from ever serving as an officer or director of a public company in the future; and (4) a third tier civil monetary penalty under 15 U.S.C. § 78u(d)(3).

In response to this motion, Mr. Kaiser argues that collateral estoppel cannot apply here because the SEC has failed to establish all of the requirements, particularly the requirement that "the party against whom estoppel is asserted … had a full and fair opportunity to litigate the issue[s] in the previous forum," *Sedlack v. Braswell Services Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998). He also contests each remedy sought by the SEC. These arguments will be addressed below.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. Pro. 56(c). The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise proper-

---

under 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b–5 (Count II); and false filings with the SEC under 15 U.S.C. §§ 78m(a) and 78ff and 17 C.F.R. § 240.13a–1 (Counts III through VI). (Pl.'s Mot. at Ex. B, Kaiser Indictment.)

**3.** Specifically, these were securities fraud under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 (Count I); reporting violations under 15 U.S.C. § 78m(a), 17 C.F.R. §§ 240.12b–20 and 240.13a–1 (Count II); and record keeping violations under 15 U.S.C. § 78m(b) and 17 C.F.R. § 240.13b2–1 (Count III). (Pl.'s Mot. at Ex. E, Second Amended Compl.).

ly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir.2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### A. Collateral Estoppel Claim

 The doctrine of collateral estoppel bars a party from relitigating an issue of fact or law determined against that party in an earlier action, even if the second action differs significantly from the first one. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.") (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)); *United States v. Wight*, 839 F.2d 193, 196 (4th Cir.1987). Nonmutual offensive collateral estoppel, the type of collateral estoppel raised here, allows a non-party to a previous action to prevent a defendant in the current action from relitigating issues already decided against him in that previous action. *Parklane Hosiery*, 439 U.S. at 331–32, 99 S.Ct. 645 (holding that nonmutual offensive collateral estoppel is permissible).

 The Fourth Circuit has held that, in order for collateral estoppel to apply, the party asserting it must establish that:

(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack*, 134 F.3d at 224. Requirements (1) through (3) have been met here.[4] The issue of whether requirement (4) has been met was resolved in favor of the SEC in

---

4. As is apparent from the SEC's pleadings (*see* Pl.'s Mem. at Attach. 2, Statement of Facts as to Which There is No Genuine Issue), and supported by the criminal indictment and the second amended complaint, the issues sought to be precluded in this case are identical to the ones previously litigated, satisfying the first requirement. *See SEC v. Gruenberg*, 989 F.2d 977, 978 (8th Cir.1993) (per curiam) (finding, after "carefully reviewing the allegations in each count of conviction of the indictment and the SEC allegations in each count of the civil complaint," the "necessary identity of issues" for collateral estoppel where civil defendant was charged with violations of the same securities laws under which he was previously convicted in a criminal case). In

my June Order.[5] Thus, the only requirement potentially barring the application of collateral estoppel to this case is the fifth, that "the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum."

■ As an initial matter, the meaning of the phrase "full and fair opportuni-

ty to litigate" in this context should be clarified. Mr. Kaiser seems to understand the phrase to refer to the subjective fullness and fairness of specific outcomes of litigation, such as trial results and specific rulings made during trial, issues which he is currently contesting through his appeal in the Second Circuit. For purposes of collateral estoppel, however, the key is the objective fullness and fair-

the New York proceeding, Mr. Kaiser defended against three sets of allegations, namely that: (1) he committed fraud "in connection with the purchase or sale of securities" in violation of 15 U.S.C. §§ 78j(b) and 78ff as well as 17 C.F.R. § 240.10b-5 (Pl.'s Mot. at Ex. B, Kaiser Indictment ¶ 53); (2) he made false filings in violation of 15 U.S.C. §§ 78m(a) and 78ff, as well as 17 C.F.R. § 240.13a–1 (*id.* ¶¶ 55, 57, 59, & 61); and (3) he engaged in a conspiracy to do all of the above in violation of 18 U.S.C. § 37 (*id.* ¶¶ 46–51), a conspiracy which included false record-keeping in violation of 15 U.S.C. §§ 78m(b) and 78ff, as well as 17 C.F.R. § 240.13b2–1 (*id.* ¶¶ 46 & 49). In the current proceeding, the three sets of allegations made against Mr. Kaiser are all encompassed by the three sets of allegations made in the New York proceeding. The SEC alleges that: (1) Mr. Kaiser committed fraud "in connection with the purchase of securities" in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 (Pl.'s Mot. at Ex. E, Second Amended Complaint ¶ 127); (2) he made false filings in violation of 15 U.S.C. §§ 78m(a), as well as 17 C.F.R. §§ 240.12b–20 and 240.13a–1 (*id.* ¶ 130); and (3) he engaged in false record-keeping in violation of 15 U.S.C. §§ 78m(b) and 17 C.F.R. § 240.13b2–1 (*id.* ¶ 133). The SEC's allegations are virtually identical to those in the prior proceeding, being based on exactly the same facts and brought under the same statutory provisions.

Regarding the second and third requirements, each of the allegations raised here was determined in the prior criminal proceeding by a full jury trial, and the issues contained in the present allegations were central to the eventual findings of guilt in that trial. Therefore, the second and third requirements are satisfied as well. *See Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 570–71, 71 S.Ct. 408, 95 L.Ed. 534 (1951) (finding that a jury verdict in a previous criminal case

established prima facie all matters of fact and law at issue in a subsequent civil action); *SEC v. Bilzerian*, 29 F.3d 689, 694 (D.C.Cir. 1994) (finding a defendant's past securities fraud criminal convictions to have "conclusively established all of the facts the SEC was required to prove" in order for collateral estoppel to apply to its subsequent civil action).

5. Mr. Kaiser had argued that, because the criminal case is pending appeal, and because his sentence has been stayed pending appeal, collateral estoppel cannot apply to this civil case. I stated in my June Order that "[t]he fact that Mr. Kaiser has appealed his criminal conviction does not affect the finality of that judgment for purposes of collateral estoppel." 2008 WL 2346021, at *2. *See Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 188–89, 61 S.Ct. 513, 85 L.Ed. 725 (1941) ("the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality"); *SEC v. Blackwell*, 477 F.Supp.2d 891, 901 (S.D.Ohio 2007) (finding that it would "halt the process of justice" to allow defendants "to avoid the preclusive effect of the Criminal Action until their appeal is finalized"); *SEC v. Pace*, 173 F.Supp.2d 30, 33 (D.D.C.2001) ("The fact that [defendant's] appeal from his conviction is still pending does not affect the application of collateral estoppel."); 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. § 4433 (3d ed. 2008); *see generally Emich Motors Corp.*, 340 U.S. at 568, 71 S.Ct. 408 ("It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding."); *Wight*, 839 F.2d at 196 ("The doctrine of collateral estoppel may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil proceeding.").

ness of the *opportunity* to litigate. Where the non-moving party has had no opportunity to litigate particular issues, then collateral estoppel may not apply to them.[6] *See Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.,* 455 F.Supp.2d 399, 412 (D.Md.2006) (finding there not to have been a full and fair opportunity to litigate an issue where the non-moving party had no opportunity to be heard on that issue). Likewise, where the opportunity to litigate was impeded by adjudicative procedures that were cursory, poor in quality, or otherwise unfair, then collateral estoppel ought not apply. *See Montana,* 440 U.S. at 164 n. 11, 99 S.Ct. 970 ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."); *Wight,* 839 F.2d at 197 (finding collateral estoppel not to apply to an issue about which no evidence was introduced in the prior proceeding, making it difficult to contest); *United States v. Maxwell,* 189 F.Supp.2d 395, 405 (E.D.Va.2002) (finding collateral estoppel not to apply to an issue about which nonmoving party had learned only one day prior to its adjudication in the previous proceeding). As the Supreme Court has noted, applying collateral estoppel in these situations offends due process. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (Where litigants "have never had a chance to present their evidence and arguments on [a] claim[,][d]ue process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.").

■ Conversely, where the non-moving party had the incentive to litigate vigor-ously in the prior proceeding, and was able in that proceeding to examine the evidence against him, present his own evidence, cross-examine witnesses, be represented by competent counsel, and otherwise enjoy the protections of due process as relates to the issue under dispute, he will generally be considered to have had a full and fair opportunity to litigate that issue for purposes of collateral estoppel. *See Parklane Hosiery,* 439 U.S. at 332–33, 99 S.Ct. 645 (finding the non-moving party to have had a full and fair opportunity to litigate where, in the previous proceeding, he had "every incentive to litigate ... fully and vigorously" and had enjoyed all the "procedural opportunities" that would be available to him in the second proceeding); *Blackwell,* 477 F.Supp.2d at 901–02; *cf. Murphy v. Gallagher,* 761 F.2d 878, 883 (2d Cir.1985). This determination is not to be made lightly, however, and should be based on the specific facts and equities of the case at hand. *See Blonder–Tongue Labs., Inc.,* 402 U.S. at 333, 91 S.Ct. 1434.

■ The SEC has sufficiently shown, and Mr. Kaiser has not persuasively contested, that the New York trial afforded him a full and fair opportunity to litigate the issues raised against him in this proceeding. As previously discussed, all of the issues to be litigated here were central to Mr. Kaiser's criminal trial. (*See supra* note 3.) Given the gravity of the allegations against him and the potential criminal sanctions, Mr. Kaiser and his counsel had every incentive to litigate vigorously. This they did, over the course of a twenty-day jury trial, during which Mr. Kaiser was afforded every opportunity to submit evidence and examine the evidence against him, call witnesses and cross-examine the

---

**6.** In addition, of course, the issue must in fact have been raised and decided. *See Haring v. Prosise,* 462 U.S. 306, 317–18, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (finding collateral es-toppel not to apply to an issue "that was never raised, argued, or decided" in the prior proceeding even though the party sought to be estopped had the opportunity to do so.)

witnesses against him, and otherwise enjoy the fair procedures provided by the district court for the Southern District of New York. In short, Mr. Kaiser had a "full and fair opportunity to litigate the issue [s raised against him here] in the previous forum," *Sedlack*, 134 F.3d at 224, and the alleged errors are appellate issues for the Second Circuit to address. *Blackwell*, 477 F.Supp.2d at 902.

All of the perceived unfair events during trial that Mr. Kaiser now raises fail to demonstrate that he lacked a "full and fair opportunity to litigate." Mr. Kaiser describes three matters in particular that he views as "unfair": (1) improper jury instructions, (2) incorrect evidentiary rulings under Federal Rule of Evidence 404(b), and (3) improper admission of hearsay statements. These alleged procedural deficiencies, which Mr. Kaiser is challenging in his Second Circuit appeal, are not the sorts of deficiencies that deprive a party of a full and fair opportunity to litigate and therefore justify preventing application of collateral estoppel. *See Hurdle v. Com. of Va. Dept. of Envtl. Quality*, 227 F.Supp.2d 549, 564 (E.D.Va.2002) (finding alleged procedural defects not to be sufficient to prevent application of collateral estoppel); *Pignato v. Com. of Va. Dept. of Envtl. Quality*, 948 F.Supp. 532, 539 n. 7 (E.D.Va. 1996) (finding defendant's challenges to trial decisions in previous case not to prevent application of collateral estoppel on grounds of unfairness). Indeed, the trial transcript amply demonstrates that, regardless of the particular rulings on these matters, Mr. Kaiser had an objectively full and fair opportunity to litigate them.[7]

Moreover, as mentioned above, whether these matters may constitute reversible error is a question for the Second Circuit to decide. It is not appropriate for this court to engage in a full-scale review of the quality of the litigation in the prior proceeding before making a collateral estoppel determination. *See* 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. § 4423 (3d ed. 2008); *accord Parklane Hosiery*, 439 U.S. at 326, 99 S.Ct. 645 ("Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.") (internal footnote omitted). Summary judgment in this case can be set aside if the Second Circuit vacates Mr. Kaiser's conviction, but, until then, this court should accept his conviction as final.

## B. *Penalties*

### i. *Permanent Injunction*

■ Where a defendant has been found guilty of a securities violation, a district court may enjoin that defendant from further securities violations "upon a proper showing." 15 U.S.C. § 78u. The decision whether to grant such injunctive relief is within the court's broad discretion. *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 424 (D.Md.2005). The key question for the court to examine in making this decision is whether "there is a reasonable likelihood that the wrong will be repeated." *Id.* (quoting *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972)); *SEC v. Marker*, 427 F.Supp.2d 583, 590

---

7. For examples, see Def.'s Opp., J.A. 1720 (where the district court gave Mr. Kaiser the opportunity to make changes to its proposed jury instructions); *id.* 1724 (where the district court asked Mr. Kaiser if there were objections to his proposed jury instructions); *id.* 926–35 (where the district court heard detailed arguments regarding Mr. Kaiser's 404(b) objection); and *id.* 1161–65 (where the district court heard detailed arguments regarding Mr. Kaiser's hearsay objection).

(M.D.N.C.2006). Factors that district courts consider in answering this question include:

(1) the seriousness of the original violation; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved on the part of the defendant; (4) the defendant's recognition of his unlawful conduct and the sincerity of his assurances against future violations; and (5) the likelihood that the defendant's occupation will present opportunities for future violations.

*Marker,* 427 F.Supp.2d at 590; *see Lawbaugh,* 359 F.Supp.2d at 424–25.

■ In this case, as the SEC points out, the original violation was a massive fraud that, by its design, involved extensive, repeated actions by Mr. Kaiser. The fact that Mr. Kaiser's fraud scheme involved repeated misrepresentations over a period of years also suggests a substantial degree of scienter. Finally, Mr. Kaiser's allocution at sentencing—offered by his counsel as evidence of his remorse—fails to persuade this court either that he truly recognizes the unlawfulness of his conduct or that he is sincere in his assurances against future violations. For all of these reasons, a permanent injunction from further securities violations is warranted here. This finding is consistent with the findings of other courts in similar cases. *See, e.g., Bilzerian,* 29 F.3d at 695 (finding that the nature and extent of the securities violations warranted a permanent injunction); *Gruenberg,* 989 F.2d at 977; *Blackwell,* 477 F.Supp.2d at 912; *Marker,* 427 F.Supp.2d at 591; *Lawbaugh,* 359 F.Supp.2d at 425; *Pace,* 173 F.Supp.2d at 34.

### ii. Disgorgement

■ When securities fraud is found, courts may order disgorgement. *Marker,* 427 F.Supp.2d at 591; *Lawbaugh,* 359 F.Supp.2d at 425. Disgorgement is "an equitable remedy designed to prevent the unjust enrichment of the wrongdoer and to deter others from violating the federal securities laws." *Marker,* 427 F.Supp.2d at 591. Accordingly, disgorgement is not limited to an extraction of ill-gotten gains from the fraud. Indeed, the district court has broad discretion in determining whether to award disgorgement and in what amount. *Id.* It is also recognized that the disgorgement calculation is inexact; "it is impossible to say with certainty what portion of [a defendant's] profits is attributable to his securities violations." *Bilzerian,* 29 F.3d at 697. Therefore, a court's disgorgement calculation need only be a reasonable approximation of gains causally connected to the fraud. *See SEC v. First City Fin. Corp., Ltd.,* 890 F.2d 1215, 1231 (D.C.Cir.1989); *cf. In re General Motors Corp.,* 110 F.3d 1003, 1019 n. 16 (4th Cir. 1997) ("where a 'harm' amount is difficult to calculate, a court is wholly justified in requiring the party in contempt to disgorge any profits it may have received that resulted in whole or in part from the contemptuous conduct.") (internal citations omitted). Finally, prejudgment interest may be included in the disgorgement amount, so as to prevent the defendant from "profiting from his or her illegal conduct." *Marker,* 427 F.Supp.2d at 592.

The SEC requests that Mr. Kaiser disgorge his $680,500 bonus from fiscal year 2001, as well as his salary from fiscal years 2001 ($429,999) and 2002 ($438,461), plus prejudgment interest. It contends that both the bonus and the 2001 and 2002 salaries were the product of Mr. Kaiser's unlawful activities. These contentions will be examined in turn.

■ In the criminal indictment against Mr. Kaiser, it was alleged that his compensation at USF "was based, among other things, on USF's ability to meet or exceed budgeted earnings targets. Defendant

Mark Kaiser received a bonus greater than his 2001 salary because USF purportedly satisfied earnings goals for fiscal year 2001." (Pl.'s Mot. at Ex. B, Indictment ¶ 21.) The indictment also alleged that "[f]ailure to meet earnings targets for 2002 would have reduced or precluded bonuses for Kaiser and other top executives at USF," (*id.* ¶ 32), an allegation corroborated during trial by the testimony of co-conspirator Timothy Lee. (Pl.'s Reply at Ex. G, Tr. pp. 881–82.) The indictment further alleged that Mr. Kaiser manipulated USF's earnings figures during the years 2001 and 2002 through deliberate misstatements of promotional allowances ("PAs"). (*Id.* ¶ 51.) This deliberate manipulation caused USF to appear to have met its earnings targets during those years. (*Id.* ¶¶ 25–38). Mr. Kaiser was eventually convicted of one count of conspiracy that included all of these charges (Def.'s Opp., J.A. 1786; Pl.'s Mot. at Ex. B, Indictment ¶¶ 46–51); one count of securities fraud that also included these charges (Def.'s Opp., J.A. 1786; Pl.'s Mot. at Ex. B, Indictment ¶¶ 52–53); and four counts of false filings related to these charges (Def.'s Opp., J.A. 1786–87; Pl.'s Mot. at Ex. B, Indictment ¶¶ 54–61). In short, the indictment alleged, and Mr. Lee testified, that Mr. Kaiser's bonuses were tied to USF meeting its earnings targets, and Mr. Kaiser was convicted of manipulating USF's earnings figures so that it would meet those targets. It is reasonable to infer that Mr. Kaiser's bonus for fiscal year 2001 would not have been given but for his unlawful inflation of USF's earnings. Accordingly, disgorgement of this bonus, plus prejudgment interest, is appropriate.

■ This inference is not as reasonably drawn, however, for Mr. Kaiser's salary for fiscal years 2001 and 2002. The SEC argues that the trial testimony of Mr. Lee shows that Mr. Kaiser's entire income—not simply his bonuses—was tied to his meeting earnings targets. In this tes-

timony, Mr. Lee states that Mr. Kaiser would be paid a "bonus plus [his] salary" if USF's earnings targets were met (Pl.'s Reply at Ex. G, Tr. p. 882), but it does not suggest that he would not be paid a salary if they were not met. I therefore take that statement to mean only that, while ordinarily Mr. Kaiser would be paid an annual salary, he would be paid a bonus in addition to his salary if that fiscal year's earnings targets were met. Further, it is reasonable to assume that Mr. Kaiser performed various functions of value to the company other than the fraudulent activities which inflated earnings. Accordingly, I cannot conclude, based purely on Mr. Lee's testimony, that Mr. Kaiser's salary was causally linked to his unlawful conduct, and will not order disgorgement of his salary from fiscal years 2001 and 2002. *See SEC v. Jones,* 476 F.Supp.2d 374, 386 (S.D.N.Y.2007) (denying the SEC's requested disgorgement where it failed to put forward sufficient evidence that defendants' compensation was causally related to their securities violations).

### iii. *Officer & Director Bar*

■ A court may permanently bar a defendant from serving as an officer or director of a public company in the future if his "conduct demonstrates unfitness to serve as an officer or director." 15 U.S.C. § 78u(d)(2). In determining whether or not a bar is warranted, the court is to consider such factors as: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Lawbaugh,* 359 F.Supp.2d at 426 (quoting *SEC v. Patel,* 61 F.3d 137, 141 (2d Cir.1995)).

■ In this case, the SEC argues that Mr. Kaiser's criminal conviction is sufficient to warrant a permanent officer and director bar. Mr. Kaiser argues that such a "lifetime ban" is only appropriate in particularly egregious cases. (Def.'s Opp. at 36.) In light of the gravity of the fraud here, which is itself egregious, and in light of the fact that Mr. Kaiser both played a central role in [8] and had a major economic stake in that fraud, an order of lifetime debarment is appropriate. *See, e.g., Lawbaugh,* 359 F.Supp.2d at 426 (finding an officer and director bar to be appropriate where "[d]efendant's role was central to the violation, and his economic stake was quite substantial[,] . . . [involving] millions of dollars"). Accordingly, this court will order a permanent officer and director bar.

### iv. Third Tier Civil Monetary Penalty

Civil monetary penalties may be ordered in securities actions under certain parameters. 15 U.S.C. § 78u(d)(3). If the crime for which the penalty is sought involves a fraud that "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" § 78u(d)(3)(B)(iii), then the court may impose a penalty of up to $120,000 or the amount of the defendant's gain. *Id.*; 17 C.F.R. § 201.1002.

■ The SEC argues that, given the nature and extent of the fraud here, which involved multiple securities law violations and a substantial loss to shareholders, a civil monetary penalty of some kind is warranted. Mr. Kaiser argues that such a penalty is not warranted, and further ar-

gues that such a penalty raises double jeopardy concerns, because he already has been ordered to pay a criminal monetary penalty of $50,000. He cites *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) for this argument.

This court agrees with the SEC and finds a civil monetary penalty to be appropriate here, in order to more effectively sanction Mr. Kaiser's conduct and deter future securities violators. Contrary to Mr. Kaiser's assertion, such a penalty does not raise double jeopardy concerns,[9] and courts in this circuit have not hesitated to impose civil monetary penalties in cases involving less substantial frauds. *See, e.g., Marker,* 427 F.Supp.2d at 593 (finding a third tier civil monetary penalty of $500,000 against a defendant and his company to be appropriate where "[d]efendants' actions were both fraudulent and deceitful and resulted in losses to individual investors of over $4.6 million"); *Lawbaugh,* 359 F.Supp.2d at 426 (finding a third tier civil monetary penalty of $120,000 to be appropriate where "[d]efendant's actions were fraudulent and deceitful and resulted in individual investor and corporate losses of over $4 million"). Accordingly, a civil monetary penalty of $120,000 will be imposed.

### CONCLUSION

For the foregoing reasons, the SEC's motion for summary judgment as to defendant Mark P. Kaiser will be granted in substantial part. The SEC is entitled to relief in the form of an order permanently enjoining Mr. Kaiser from further securi-

---

8. Indeed, at the sentencing in the criminal case, the trial judge stated, "I think the evidence is very, very substantial that Mr. Kaiser was the organizer and leader of the scheme." (Def.'s Opp., J.A. 1899.)

9. While it is true that the Court in *Halper* held a second monetary penalty imposed for the

same crime to violate double jeopardy, 490 U.S. at 450, 109 S.Ct. 1892, the Court also made clear that its holding was reserved for those rare cases where a small-time offender is exposed to a second civil sanction "so disproportionate to the damages caused that it constitutes a second punishment." *Id.*; *see Bilzerian,* 29 F.3d at 696.

ties violations and participation as an officer or director of a public company, directing him to disgorge his bonus of $680,500 from fiscal year 2001 plus prejudgment interest, and imposing a civil penalty of $120,000. Counsel may have until **April 24, 2009,** to submit a proposed order, agreed-upon as to form if possible, in accordance with this ruling.